## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CC METALS AND ALLOYS, LLC.,** | |
| **and** | |
| **FERROGLOBE USA, INC.,** | **Court No. 25-00131** |
| **Plaintiffs,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant.** | |

## COMPLAINT

Plaintiffs in this action, CC Metals and Alloys, LLC, and Ferroglobe USA, Inc., by and through undersigned counsel, hereby file this Complaint and state as follows against the United States, Defendant.

### ADMINISTRATIVE DECISION TO BE REVIEWED

1.    Plaintiffs seek review of the final determination of the U.S. Department of Commerce, International Trade Administration's ("Commerce's") less-than-fair value ("LTFV") investigation of ferrosilicon from Malaysia, which was published as *Ferrosilicon From Malaysia:  Final Affirmative Determination of Sales at Less-Than-Fair-Value and Final Negative* Determination *of Critical Circumstances*, 90 Fed. Reg. 14,105 (Dep't of Commerce Mar. 28, 2025) ("*Final Determination*"), and accompanying Issues and Decision Memorandum ("*IDM*").  The *Final Determination* became effective upon the publication of *Ferrosilicon From Brazil, Kazakhstan, and Malaysia: Antidumping Orders*, 90 Fed. Reg. 21,456 (Dep't Commerce May 20, 2025) ("*Orders*").

**JURISDICTION**

2.      This action is filed pursuant to section 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of the

Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II),

1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c).  This Court possesses exclusive jurisdiction over this

action pursuant to 28 U.S.C. § 1581(c).

**STANDING OF PLAINTIFFS**

3.      CC Metals and Alloys, LLC., and Ferroglobe USA, Inc. are American producers of

ferrosilicon and were the petitioners in the challenged antidumping investigation of ferrosilicon

from Malaysia.  Accordingly, they were interested parties within the meaning of sections

771(9)(C) and 516A(f)(3) of the Act; 19 U.S.C. §§ 1677(9)(C), 1516a(f)(3), and actively

participated in Commerce's investigation, which resulted in the contested determination.  Thus,

plaintiffs have standing to bring this action pursuant to section 516A(d) of the Act, 19 U.S.C.

§ 1516a(d), and 28 U.S.C. § 2631(c).

**TIMELINESS OF ACTION**

4.      Section 516a(a)(2)(A)(i)(II) of the Act and 19 U.S.C. § 1516a(a)(2)(A)(i)(II) require that

in actions challenging Commerce's determinations pursuant to section 1516A(a)(2)(B)(i)

regarding LTFV investigations, the Summons must be filed within 30 days of the date of

publication in the Federal Register of the *Orders*.  Further, section 516a(a)(2)(A) and 19 U.S.C.

§ 1516a(a)(2)(A) state that a complaint must be filed within thirty days thereafter.

5.      Commerce published the *Orders* on May 20, 2025, Plaintiffs commenced this action by

filing a Summons with this Court on June 20, 2025, and Plaintiffs are now filing this Complaint

on July 21, 2025, which, pursuant to Rule 6(a)(1)(C) of the Rules of the United States Court of

International Trade, is the next business day following the final day of the subsequent thirty-day

period.  Accordingly, this Complaint is being filed within the time allowed for the filing of a

compliant by statute and this Court's Rules.

## BACKGROUND

6.       On March 28, 2024, Plaintiffs filed a petition with Commerce and the International Trade

Commission alleging that imports of ferrosilicon from Malaysia were being sold in the United

States for LTFV.

7.       On April 24, 2024, Commerce initiated its LTFV investigation of ferrosilicon from

Malaysia.  *See Ferrosilicon from Brazil, Kazakhstan, Malaysia, and the Russian Federation:*

*Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 31,137 (Dep't of Commerce

Apr. 24, 2024).

8.       On November 6, 2024, Commerce issued its preliminary determination in the LTFV

investigation, preliminarily concluding that certain sales of Malaysian ferrosilicon were sold for

LTFV.  *See Ferrosilicon from Malaysia:  Preliminary Affirmative Determination of Sales at Less*

*Than Fair Value, Preliminary Negative Determination of Critical Circumstances, Postponement*

*of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 8,810 (Dep't of

Commerce Nov. 6, 2024) and accompanying Preliminary Determination Memorandum

("*PDM*").  Commerce preliminarily calculated an adjusted antidumping margin for Malaysian

ferrosilicon exporter OM Sarawak Sdn. Bhd ("OMSA") of 6.23 percent *ad valorem*.

9.       In its submissions to Commerce, OMSA reported all of its U.S. sales as export prices

sales ("EP"), pursuant to section 772(a) of the Act, 19 U.S.C. § 1677a(a), and Commerce

preliminarily agreed that all of OMSA's sales to the United States "were EP sales because the

first sale to an unaffiliated party was made before the date of importation and the CEP

methodology was not otherwise warranted based on the facts of the record." *PDM* at 9 (*D. Export Price and Constructed Export Price)*.

10.      OMSA reported the earlier of invoice date or shipment date as the date of sale for all of its U.S. sales of subject merchandise. *PDM* at 8-9 (*C. Date of Sale)*.  Commerce agreed with OMSA that the earlier of shipment and invoice date were the dates when OMSA's material terms of sale were set, and used those reported dates as the date of sale in OMSA's preliminary LTFV calculations.  *See id.*

11.      On December 11, 2024, Commerce issued an amended preliminary determination to correct significant ministerial errors, increasing OMSA's adjusted preliminary margin to 18.80 percent *ad valorem*.  *See Ferrosilicon from Malaysia:  Amended Preliminary Determination of Sales at Less Than Fair Value and Amended Preliminary Negative Determination of Critical Circumstances*, 89 Fed. Reg. 99,829 (Dep't of Commerce Dec. 11, 2024).

12.      On February 25, 2025, OMSA and Plaintiffs filed their administrative case briefs with Commerce.  *See* OMSA Case Brief (Feb. 25, 2025); Plaintiffs' Case Brief (Feb. 25, 2025). OMSA argued in its case brief that Commerce should use the final invoice date as date of sale for all of OMSA's U.S. sales because it claimed that the record evidence showed that the material terms of sale were set at that time.

13.      Plaintiffs argued in their case brief that at verification OMSA had fundamentally and materially changed its methodology for reporting Control Numbers ("CONNUMs"), switching from sales records to production testing records, which affected OMSA's reported cost, home market sales, and U.S. sales databases.  Plaintiffs explained that the changes resulted in a significant misalignment between OMSA's reported costs and sales.  Plaintiffs therefore argued that rather than relying on OMSA's unreliable data, Commerce should apply total or partial

adverse facts available ("AFA"), pursuant to section 776(a) and (b) of the Act; 19 U.S.C.

§§ 1677e(a) and (b).

14.    On March 3, 2025, Plaintiffs filed their rebuttal brief and, with respect to the date of sale

issue, argued that Commerce should continue to use the earlier of shipment date or invoice date

for OMSA's date of sale in its calculations. *See* Plaintiffs' Rebuttal Brief (Mar. 3, 2025).

Plaintiffs argued that proprietary information on the record showed that the material terms of sale

were set by the earlier date of when the merchandise was shipped from OMSA's facility, or

when the first invoice was issued, and that OMSA's sales contracts had set forth the information

necessary to determine the final price of the goods for each transaction.

15.    OMSA also filed its rebuttal brief on March 3, 2025, arguing that the changes it made at

verification were minor, were aligned during the cost and sales verifications, and did not create

distortions. *See* OMSA's Rebuttal Brief (Mar. 3, 2025).

16.    On March 28, 2025, Commerce issued the *Final Determination* and accompanying *IDM*.

In the *IDM*, Commerce determined that for OMSA's sales for which the price was based on a

published price, it was appropriate to continue to use the earlier of shipment or invoice date as

the date of sale. *See IDM* at Comment 6.  On the other hand, for OMSA's sales for which the

price was calculated based on an onward sale in the United States between a trader (OMSA's

customer) and that entity's customer, Commerce determined that the sales were not EP sales, as

reported consistently by OMSA, but were instead constructed export price sales ("CEP"),

pursuant to section 772(b) of the Act, 19 U.S.C. § 1677a(b). *Id.*  Converting the onward EP sales

into CEP sales resulted in a change to the date of sale for all of the onward transactions.

Specifically, the date of sale was now later in time, based on the final invoice date for purposes

of Commerce's calculations.  This meant that Commerce now considered several of these sales

to be "sold" after the period of investigation. Commerce therefore removed many of OMSA's onward sales from its LTFV margin calculation. *Id.*

17.     With respect to the significant changes to its information OMSA supplied at verification, Commerce determined that "{m}erely because a large number of transactions are affected by a correction does not necessarily render a correction significant or warrant the application of AFA." *IDM* at Comment 1. Commerce determined that the changes were minor in nature, and therefore the application of partial or total AFA to OMSA was not warranted. *See id*. Commerce calculated a final adjusted LTFV margin for OMSA of 4.69 percent *ad valorem*.

18.     On May 20, 2025, Commerce published the *Orders* covering ferrosilicon from various countries, including Malaysia.

## STATEMENT OF CLAIMS

### COUNT ONE

**(Wrongful Conversion of OMSA's Onward Sales to CEP Sales and Use of Final Invoice Date as the Date of Sale for those Sales)**

19.     Paragraphs 1 to 18 are adopted and incorporated herein by reference.

20.     Commerce wrongfully determined in the *Final Determination* that OMSA's onward sales transactions were CEP sales and that the final invoice date was the appropriate date of sale for those transactions. In fact, the administrative record reflected that the prices of such sales were negotiated and determined in accordance with the terms of the original sales contract and initial invoices, and therefore Commerce should not have converted those EP sales into CEP sales, nor should it have revised the date of sale for those transactions to be the final invoice date.

21.     Accordingly, Commerce's conclusions in the in the *Final Determination* that OMSA's onward sales were CEP sales and that the date of sale for those transactions should be the final

invoice date are unsupported by substantial evidence on the record and are otherwise not in accordance with law.

## COUNT TWO

### (Failure to Apply Adverse Facts Available to OMSA)

22.     Paragraphs 1 to 21 are adopted and incorporated herein by reference.

23.     OMSA provided significantly revised information at verification to Commerce officials, which Commerce used to calculate OMSA's margin of dumping.  The CONNUM methodologies offered at verification demonstrated that the previously reported data were not accurate and reliable, and the information supplied affected all of Commerce's cost, home market sales and U.S. sales databases.  The changes resulted in a fundamental misalignment between OMSA's reported costs and sales.  Plaintiffs therefore argued that Commerce should apply AFA to OMSA's calculations, either in total or partial, pursuant to section 776(a) and (b); 19 U.S.C. §§ 1677e(a) and (b).  Commerce disagreed, finding that the information provided by OMSA was minor in nature, and did not apply AFA to OMSA.

24.     Commerce was incorrect in determining that the CONNUM-related information provided by OMSA at verification was minor in nature.  Commerce's determination affected all three of OMSA's databases and made a large difference in OMSA's LTFV margin calculation.  Commerce should have determined that OMSA's new information was not minor because it created additional CONNUMs and decreased OMSA's LTFV margin by an amount that was neither neutral nor minor.  Furthermore, because verification is not the place for fundamental methodological changes to be introduced for the first time on the record, Commerce should have determined that OMSA had not acted to the best of its ability and, in accordance with sections 776(a) and (b) of the Act and 19 U.S.C. §§ 1677e(a) and (b), applied AFA to OMSA's margin calculations.

7

25.    Accordingly, Commerce's use of the CONNUM-related information supplied by OMSA

at verification in calculating OMSA's LTFV margin in the *Final Determination* is not supported

by substantial evidence on the record and is otherwise not in accordance with law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

    (a)  hold that Commerce's *Final Determination* is unsupported by substantial evidence

        and otherwise not in accordance with law;

    (b)  remand the *Final Determination* with instructions for Commerce to issue a new

        determination that is consistent with this Court's decision, including using the earlier

        of shipment date or invoice date for the date of sale for OMSA's onward transactions

        and applying AFA in calculating OMSA LTFV margin; and

    (c)  provide such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date:  July 21, 2025

/s/ Adam H. Gordon
Adam H. Gordon, Esq.
Benjamin J. Bay, Esq.
Scott D. McBride, Esq.

**THE BRISTOL GROUP PLLC**
1707 L Street NW
Suite 1050
Washington, DC 20036
Tel:  (202) 991-2701

*Counsel to CC Metals and Alloys, LLC and Ferroglobe USA, Inc.*